UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MERCEDES MARINEZ,                                 :

                    Plaintiff,                    :          OPINION AND ORDER

                    -v.-                          :          16 Civ. 3243 (GWG)

COMMISSIONER OF SOCIAL SECURITY,                  :

                    Defendant.                    :
-------------------------------------------------------------X
GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

        Plaintiff Mercedes Marinez brought this action under 42 U.S.C. § 405(g) (as incorporated

by 42 U.S.C. § 1383(c)(3)) to obtain judicial review of the final decision of the Commissioner of

Social Security ("Commissioner") denying her claim for supplemental security income ("SSI")

benefits.  Both parties have moved for judgment on the pleadings.[1]  For the following reasons,

Marinez's motion is granted and the Commissioner's motion is denied.

I. BACKGROUND

        A. Procedural History

        Marinez applied for SSI benefits on February 23, 2013.  See Certified Administrative

Record, filed Aug. 3, 2016 (Docket # 10) ("R."), at 131-39.  The Social Security Administration

denied her application on May 16, 2013.  R. 95-106.  Marinez requested a hearing before an

Administrative Law Judge ("ALJ").  R. 108-10.  After a hearing held on September 12, 2014, R.

51-83, the ALJ issued a decision on November 12, 2014, finding that Marinez was not disabled.

R. 14-27.  The Appeals Council denied Marinez's request for review on March 31, 2016, making

---

[1]  See Notice of Motion, filed Oct. 3, 2016 (Docket # 13); Memorandum of Law in
Support of Defendant's Motion for Judgment on the Pleadings, filed Oct. 3, 2016 (Docket # 14)
("Comm'r Mem."); Notice of Cross-Motion for Judgment on the Pleadings, filed Jan. 24, 2017
(Docket # 24); Memorandum of Law in Support of Plaintiff's Cross-Motion for Judgment on the
Pleadings, filed Jan. 25, 2017 (Docket # 26) ("Pl. Mem.").

the ALJ's determination the Commissioner's final decision.  R. 1-7.  Marinez then filed the instant lawsuit to review that determination.  Complaint, filed Apr. 29, 2016 (Docket # 2).

B.  The Administrative Record

Marinez and the Commissioner have each provided a summary of the medical evidence contained in the administrative record.  See Pl. Mem. at 11-20; Comm'r Mem. at 3-10.  The Court adopts these summaries, which do not materially conflict with each other, as accurate and complete for the purpose of considering the issues raised in this suit, except to the extent we discuss additional records below.  We discuss the portions of the medical evidence pertinent to this case in section III below.

C.  The Hearing Before the ALJ

Marinez was accompanied by a non-attorney representative at the hearing before the ALJ.  R. 51-83.  The ALJ heard testimony from Marinez, R. 57-77, and Dr. Pat Greene, a vocational expert, R. 77-82.

Marinez testified that she was born in 1961, and had completed a year of college.  R. 57.  She lived with her daughter and her five-year-old grandson, but she could not take care of her grandson "because of medication that [she took] to [treat] . . . depression and anxiety."  R. 58-59.  She last worked in 2009 as a child care professional, but stopped working because of her medication for depression, which kept her from sleeping.  R. 60-61.  She felt "terrible."  R. 63.  She last visited the Dominican Republic — where she had family — about three years before the hearing and stayed there for about four months.  R. 61-62.

Marinez testified that she had not had any regular treatment for her physical problems other than hypertension, nor any diagnostic testing.  R. 64-65.  She also said that she had panic attacks, which caused "palpations" in her chest and anxiety.  R. 66-68.  She treated these attacks

with anxiety pills.  R. 68-69.  She also referenced back pain, R. 64-65, arthritis in her legs and hands, see R. 65, and hypertension, R. 64.  Marinez's representative had mentioned "back pain," "hypertention" and "arthritis" in an opening statement, R. 55, though the ALJ noted that Marinez had "filed a claim that was only based on psych," R. 56.

Marinez's depression was caused by "family personal problems."  R. 61.  She had good days and bad days, but the three weeks prior to the hearing had been bad.  R. 63.  On good days she could sometimes travel by herself on buses and subways.  Id.  On bad days, if she did not have "any appointments or nothing to do," she stayed in her house.  R. 64.  She said that "most of the time I don't want to see no one, not even my family."  Id.  Marinez said that she had been seeing a psychiatrist, Dr. Gerardo Tapia,[2] but had only recently started seeing a therapist.  R 73. Regarding the therapist, the ALJ said not to "bother with those records . . . [t]hey're irrelevant" because Marinez had just started seeing her two days before the hearing.  R. 73-74.

Dr. Greene appeared by telephone. Based on Marinez's description of her previous work as a child-care provider, Dr. Greene identified this job as "child monitor . . . semi-skilled at a medium level" under the Dictionary of Occupational Titles.  R. 78.  The ALJ asked Dr. Greene to assume that Marinez could perform work-related activities with no exertional limitations, but with the following general limitations:

> She should avoid working at unprotected heights, or with hazardous machinery. She can remember; understand; and carry out simple instructions; make simple work related decisions; maintain attention; and concentration for wrote [sic] work; maintain a regular schedule; and can perform a low-stress job, defined as one with no close interpersonal contact with the general public.

R. 79.  Dr. Greene testified that Marinez could not perform her prior work.  Id.  However, she

---

[2]  The hearing record incorrectly renders this name as "Topia."

3

said that a hypothetical person with those restrictions could perform jobs such as hand packager, dishwasher, or industrial cleaner.  Id.  Dr. Greene testified that there would be no work a hypothetical claimant could perform if the claimant additionally could not maintain attention and concentration for rote work; carry out simple instructions; "interact with . . . supervisors; coworkers; or the general public; or respond appropriately to our usual work situations[] and to changes in the routine work setting"; or if she would be expected to miss more than one day of work per month.  R. 79-80.

As the hearing concluded, the ALJ said that he would try to get further records from Dr. Tapia, and would give Dr. Tapia two weeks to respond.  R. 82.  He said that "[i]f necessary, and if I don't get them, I'll make my decision based upon what I have."  Id.

D.  The ALJ's Decision

The ALJ ruled that Marinez had not been disabled since February 23, 2013, the date of her SSI benefits application.  R. 17.  In his decision, the ALJ employed the five-step sequential evaluation process described in the Social Security Administration regulations to determine whether Marinez was disabled.  R. 17-19; see 20 C.F.R. § 416.920(a).  The ALJ found that Marinez had not engaged in substantial gainful activity since the date of her application and had the severe impairment of depression.  R. 19.  However, the ALJ found that this was her only severe impairment because although the evidence indicated Marinez had hypertension, "there [was] no evidence that this condition result[ed] in any work-related limitations," and thus was not a "severe" impairment.  Id.  The ALJ also found that "there [was] no medical evidence whatsoever indicating that [Marinez] has asthma."  Id.

Next, the ALJ determined that Marinez did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20

C.F.R. part 404, subpart P, appendix 1. R. 19-20. The ALJ addressed what are commonly known as "paragraph B" criteria,[3] finding that Marinez had only mild restriction in her activities of daily living, and moderate difficulties in social functioning and "[w]ith regard to concentration, persistence or pace." R. 19-20. He also found that Marinez had not suffered any episodes of decompensation, let alone repeated episodes of extended duration. R. 20. He noted that the treatment records indicated that Marinez had been functioning well, and that her testimony and statements in the record did not indicate any limitation greater than a moderate severity. Id. For these reasons, the ALJ found that the "paragraph B" criteria were not satisfied. Id. The ALJ also found that "the evidence fails to establish the presence of the 'paragraph C' criteria." Id.[4]

---

[3] For mental disorders, the "paragraph B" criteria "represent the areas of mental functioning a person uses in a work setting." 20 C.F.R. part 404, subpt. P, app. 1 § 12.00(A)(2)(b). A claimant can satisfy the "paragraph B" criteria by showing "[e]xtreme limitation of one, or marked limitation of two," of the ability to:

1. Understand, remember, or apply information.
2. Interact with others.
3. Concentrate, persist, or maintain pace.
4. Adapt or manage oneself.

See, e.g., id. §§ 12.04(B), 12.06(B) (citations omitted). "Marked" restrictions or difficulties are serious limitations on the ability to function "independently, appropriately, effectively, and on a sustained basis" in a given area, and represent a four on a five-point scale, with one being no limitation and five being "extreme limitation" — essentially no functioning at all in a given area. Id. § 12.00(F)(2).

[4] The paragraph C criteria are used "to evaluate mental disorders that are 'serious and persistent,'" recognizing that "mental health interventions may control the more obvious symptoms and signs of [a claimant's] mental disorder." 20 C.F.R. part 404, subpt. P, app. 1 § 12.00(G)(1). A mental disorder meets the paragraph C criteria if there is

a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

The ALJ found that Marinez had the residual functional capacity to perform a full range of work at all exertional levels, but must avoid working at unprotected heights or with hazardous machinery; can remember, understand, and carry out simple instructions; can make simple work-related decisions; can maintain attention and concentration for rote work, as well as a regular schedule; and can perform work in a low stress setting — defined as one that "requires no close interpersonal contact with the general public." Id. He based this finding on the treating source records that indicated good functioning and results when Marinez's depression was treated with medications; the findings and opinions of the consulting psychologist; on the opinion of the Disability Determination Service ("DDS") reviewer; and on "statements by [Marinez] throughout the record indicating some good functioning in terms of activities of daily living and social interactions." R. 23.

The ALJ noted that Marinez had a history of problems with depression, and had been seen by Dr. Tapia from at least 2011 to 2014. R. 21. While he accepted that Marinez's impairments could reasonably cause her alleged symptoms, the ALJ found that her statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible when considering the treatment records indicating symptoms of much more mild severity than she described at the hearing." R. 22. He contrasted her statements that she had

---

1. Medical treatment, mental health therapy, psychosocial support(s) or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder; and

2. Marginal adjustment, that is . . . minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [the claimant's] daily life.

See, e.g., id. §§ 12.04(C), 12.06(C) (citations and emphasis omitted).

severe problems with depression, including isolation and difficulty getting out of bed, with her reports to her psychiatrist that she felt OK or well or "so-so," that she had good results with medication, and that she had taken an extended visit to the Dominican Republic and spent time with family at Thanksgiving.  Id.

Considering the opinion evidence, the ALJ gave little weight to Dr. Tapia's claim of "marked" limitations to Marinez's work-related functions, as he found this claim inconsistent with the underlying progress notes.  Id.  The ALJ noted that he subpoenaed additional records from Dr. Tapia, but the doctor did not respond.  Id.  He gave substantial weight to the opinion of the consultative examining psychologist as consistent with the psychologist's examination findings and Marinez's "reportedly generally normal daily activities."  Id.  The ALJ also gave partial weight to the "DDS reviewing source" because, although this person was not an examining or treating source, his opinion was consistent with the other evidence in the record. R. 22-23.

The ALJ found that while Marinez could not perform her past relevant work as a "child monitor," other jobs existed in the national economy that she could perform.  R. 23.  These included hand packager, dishwasher, and industrial cleaner.  R. 24.  The ALJ relied on the vocational expert's testimony that a person with Marinez's age, education, work experience, and residual functional capacity could perform these jobs.  Id.  Because other work existed that Marinez could perform, the ALJ found that Marinez had not been disabled since February 23, 2013.  Id.

II.  APPLICABLE LAW

A.  Scope of Judicial Review under 42 U.S.C. § 1383(g)

A court reviewing a final decision by the Commissioner "is limited to determining

whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); id. § 1383(c)(3) ("The final determination of the Commissioner of Social Security . . . shall be subject to judicial review as provided in section 405(g) . . . ."). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Matthews v. Leavitt, 452 F.3d 145, 152 n.9 (2d Cir. 2006); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

 "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)); accord McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). The Second Circuit has characterized the "substantial evidence" standard as "a very deferential

standard of review — even more so than the 'clearly erroneous' standard." <u>Brault v. Soc. Sec. Admin., Comm'r</u>, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation omitted). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would <u>have to conclude otherwise</u>." <u>Id.</u> (emphasis in original) (citation and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." <u>Johnson</u>, 563 F. Supp. 2d at 454 (citation and internal quotation marks omitted).

B. <u>Standard Governing Evaluation of Disability Claims by the Agency</u>

The Social Security Act defines the term "disability" as the "[inability] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person will be found to be disabled only if it is determined that the person's "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." <u>Id.</u> § 1382c(a)(3)(B).

To evaluate a claim of disability, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

Regulations issued pursuant to the Social Security Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. <u>See</u> 20 C.F.R. § 416.920(a)(4); <u>see</u>

<u>also</u> <u>Burgess</u>, 537 F.3d at 120 (describing the five-step process).  First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(I).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," <u>id.</u> § 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," <u>id.</u> § 416.920(c).  Third, if the claimant's impairment is severe and "meets or equals" one of the listings in 20 C.F.R. part 404, subpart P, appendix 1, and "meets the duration requirement," the claimant must be found disabled.  <u>Id.</u> § 416.920(a)(4)(iii).  Fourth, if the claimant's impairment does not meet or equal one of the listed impairments, or does not meet the duration requirement, the Commissioner must review the claimant's residual functional capacity to determine if the claimant is able to do the work he or she performed in the past, i.e., "past relevant work."  <u>Id.</u> § 416.920(a)(4)(iv).  If the claimant is able to do such work, he or she is not disabled.  <u>Id.</u>  Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's residual functional capacity, in addition to his or her age, education, and work experience, permit the claimant to do other work.  <u>Id.</u> § 416.920(a)(4)(v).  If the claimant cannot perform other work, he or she will be deemed disabled.  <u>Id.</u>  The claimant bears the burden of proof on all of these steps except the final one — that is, proving that there is other work the claimant can perform.  <u>See</u> <u>Poupore v. Astrue</u>, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

     C.  <u>The Duty to Develop the Record and the Treating Source Rule</u>

     When an ALJ assesses a claimant's alleged disability, an ALJ must develop the claimant's medical history for at least a 12-month period.  <u>See</u> <u>Shaw</u>, 221 F.3d at 131 ("The ALJ

has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings . . . .") (citing cases); accord Sims v. Apfel, 530 U.S. 103, 111 (2000) (ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits"); 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 416.912(d) (effective June 12, 2014, to Apr. 19, 2015).[5] The governing statute provides that the ALJ "shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make" the disability determination. 42 U.S.C. § 423(d)(5)(B); accord 20 C.F.R. § 416.912(d). The regulations define this as, at a minimum, "the records of [a claimant's] medical source(s) covering at least the 12 months preceding the month in which" a claim is filed. 20 C.F.R. § 416.912(d)(2). "Every reasonable effort" means that the Social Security Administration must:

> make an initial request for evidence from [a claimant's] medical source or entity that maintains your medical source's evidence and, at any time between 10 and 20 calendar days after the initial request . . . make one follow-up request to obtain the medical evidence necessary to make a determination. The medical source will have a minimum of 10 calendar days from the date of our follow-up request to reply, unless our experience with that source indicates that a longer period is advisable in a particular case.

Id. § 416.912(d)(1); accord Assenheimer v. Comm'r of Soc. Sec., 2015 WL 5707164, at *15 (S.D.N.Y. Sept. 29, 2015), appeal dismissed, No. 15-3421 (2d Cir. Apr. 15, 2016). The ALJ's duty to develop the record remains the same regardless of whether the claimant is represented by counsel. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999) (citing Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996)); accord Cancel v. Colvin, 2015 WL 865479, at *5 (S.D.N.Y. Mar. 2, 2015) (citing cases). Where the ALJ fails to develop the record, remand is appropriate. Rosa v.

---

[5] The text of this section effective March 27, 2017, 20 C.F.R. § 416.912(b)(1), is substantially the same for our purposes.

Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999).

The obligation to develop the record is "enhanced when the disability in question is a psychiatric impairment." Lacava v. Astrue, 2012 WL 6621731, at *11 (S.D.N.Y. Nov. 27, 2012); accord Gabrielsen v. Colvin, 2015 WL 4597548, at *4 (S.D.N.Y. July 30, 2015) (citing cases). This "heightened duty" derives from the fact that a claimant's mental illness may greatly impede an evaluator's assessment of a claimant's ability to function in the workplace, thus necessitating a more thorough review. See Gabrielsen, 2015 WL 4597548, at *4 (noting that an individual with a mental disorder often "adopt[s] a highly restricted and/or inflexible lifestyle within which they appear to function well") (citation and internal quotation marks omitted); accord SSR 85-15, 1985 WL 56857 (1985) (noting that the "highly restricted and inflexible lifestyle" of individuals with mental disorders may cause difficulty meeting the requirements of even low-stress jobs).

On the other hand, it is well established that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa, 168 F.3d at 79 n.5 (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996) (where the ALJ had "already . . . obtained and considered reports" from treating physicians, the ALJ "had before him a complete medical history, and the evidence received from the treating physicians was adequate for him to make a determination as to disability")).

"[I]nextricably linked to the duty to develop the record," Lacava, 2012 WL 6621731, at *13, is the so-called "treating source rule," under which an ALJ must give "more weight to medical opinions" of a claimant's treating physician when determining if the claimant is disabled. See 20 C.F.R. § 416.927(c)(2); see also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir.

12

2004) (per curiam) (the ALJ must give "a measure of deference to the medical opinion of a claimant's treating physician").[6]  A "treating source" is an "acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing relationship with [the claimant]."  20 C.F.R. § 416.927(a)(2).  The general distinction is between a source who has seen a claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required" and those based "soley on [a claimant's] need to obtain a report in support of [their] claim for disability."  Id.

Treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations."  Id. § 416.927(c)(2).  As such, when a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," an ALJ must give it controlling weight.  Id.  Inversely, the opinions of a treating source "need not be given controlling weight where they are contradicted by other substantial evidence in the record."  Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (collecting cases); accord Selian, 708 F.3d at 418 ("The opinion of a treating physician on the nature or severity of a

    [6]  20 C.F.R. § 416.927 was amended effective March 27, 2017, and the revisions apply to all claims filed before that date.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844, 5880-81 (Jan. 18, 2017).  Other than the definition of "treating source" the new regulation remains substantially the same for claims filed before March 27, 2017.  Compare 20 C.F.R. § 416.927 (version effective Aug. 24, 2012, to Mar. 26, 2017), with id. § 416.927 (version effective Mar. 27, 2017).  For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 416.927(c) now apply.  See id. § 416.927 (version effective Mar. 27, 2017).

claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record.").

If the ALJ does not give controlling weight to a treating source's opinion, the ALJ must provide "good reasons" for the weight given to that opinion.  See Greek, 802 F.3d at 375; Halloran, 362 F.3d at 32-33 (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).  When assessing how much weight to give the treating source's opinion, the ALJ should consider factors set forth in the Commissioner's regulations, which include (I) whether the source examined the claimant; (ii) the length of the treatment relationship and the frequency of the examination; (iii) the nature and extent of the treatment relationship; (iv) the supportability of the opinion with relevant evidence, particularly medical signs and laboratory findings; (v) the consistency of the opinion with the record as a whole; (vi) whether the opinion is from a specialist; and (vii) other relevant evidence.  See 20 C.F.R. § 416.927(c)(1)-(6); see also Ellington v. Astrue, 641 F. Supp. 2d 322, 330-31 (S.D.N.Y. 2009) ("[T]he ALJ should weigh the treating physician's opinion along with other evidence according to the factors" listed in 20 C.F.R. § 416.927(c)).  The Second Circuit has stated that it will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and [it] will continue remanding when [it] encounter[s] opinions from ALJ[s] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33; see also Greek, 802 F.3d at 375-77 (remanding where "ALJ did not provide any [valid] explanation for why [a treating physician's] opinion was not well-supported") (citation and internal quotation marks omitted).

III.  DISCUSSION

Among her arguments, Marinez faults the ALJ for not obtaining additional treatment

records from Dr. Tapia, see Pl. Mem. at 32 — an argument to which the Government did not respond.[7]  Because this argument is sufficient to require remand, we do not address Marinez's main argument: that the ALJ improperly discounted the opinion of Marinez's treating source, Dr. Tapia.  See Pl. Mem. at 25-30.

At the time of his decision, the ALJ had before him Dr. Tapia's treatment notes only for the period from 2011 to March 2013.  R. 21; see R. 188-99.  That there were no treatment notes after March 2013 was understandable inasmuch as Dr. Tapia's treatment notes had been requested initially on March 5, 2013.  R.86.

The problem here is that Dr. Tapia delivered his opinion that Marinez had marked limitations in functioning in June 2014, R. 211-14, and the ALJ's decision turned on the fact that Dr. Tapia's assertion that Marinez had marked limitations was "not supported by the underlying progress notes," R. 22.  Dr. Tapia's opinion indicates that he had seen Marinez monthly since the treatment records were requested in March 2013, see R. 211 — that is, including the period from March 2013 to June 2014 when the opinion was offered.  While we agree that the ALJ could properly find that the treatment notes up through March 2013 provided minimal support for Dr. Tapia's June 2014 opinion, the gap in time from March 2013 to June 2014 was of great significance given that Marinez applied for benefits in February 2013 and the ALJ found Marinez was not disabled from that date to the date of his November 12, 2014, decision.  See R. 24.  This significance is heightened in this case because Dr. Tapia was the only treating source for Marinez's psychological conditions and had treated her consistently since 2009.  See R. 211.  Further, the ALJ's only justification for discounting Dr. Tapia's opinion was that the underlying

---

[7]  The Government declined to file a brief replying to Marinez's arguments in this case.

progress notes through March 2013 did not support Dr. Tapia's findings in his 2014 report. <u>See</u> R. 22. Thus, the duty to make "every reasonable effort," 42 U.S.C. § 423(d)(5)(B); <u>accord</u> 20 C.F.R. § 416.912(d), to obtain the post-March 2013 treatment notes was heightened in this case.

The ALJ stated in his decision that he "subpoena[ed] additional records from Dr. Tapia and [the doctor] did not respond to the subpoena." R. 22; <u>see</u> R. 128. But given the unusual circumstances of this case that made the absence of these records so critical to the ALJ's decision, the lengthy passage of time, and the fact that the records from the missing time period were being sought for the very first time, we believe that the spirit if not the letter of 20 C.F.R. § 416.912(d)(1) required that the ALJ make at least one additional follow-up request to fulfill his duty to develop the record. Accordingly, the case will be remanded for the purpose of making at least one more contact with Dr. Tapia to obtain the missing records. Once those records are obtained, the ALJ will have a sound basis on which to make a judgment about Dr. Tapia's opinion.

We note also that, during the hearing, the ALJ instructed Marinez's representative not to obtain records from a different treating source who was providing therapy because "she just started two days" before the hearing. R. 74. Given that the matter is now being remanded, the ALJ should also make every reasonable effort to obtain these records. The ALJ should of course also consider the evidence that was presented to the Appeals Council when he considers this case on remand, to the extent it bears on the disability determination.

The ALJ has leave to take any further action consistent with the law and regulations governing disability determinations that is not inconsistent with this Opinion.

IV. <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings

(Docket # 13) is denied and Marinez's motion for judgment on the pleadings (Docket # 24) is granted. The case is remanded to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order. The Clerk of Court is requested to enter judgment.

      SO ORDERED

DATED:     New York, New York
            September 12, 2017

                            GABRIEL W. GORENSTEIN
                            United States Magistrate Judge